

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-19-00231-CV

_____

IN THE INTEREST OF J.S. AND R.S., CHILDREN

On Appeal from the 325th District Court
Tarrant County, Texas
Trial Court No. 325-645471-18

Before Sudderth, C.J.; Womack and Wallach, JJ.
Memorandum Opinion by Justice Wallach

## MEMORANDUM OPINION

After a bench trial, the trial court terminated the parent-child relationships between T.S. (Mother) and J.S. (Father) and their teenaged daughters J.S. (Jackie) and R.S. (Rachel) (collectively, the girls).[1] Only Mother appeals. In two issues, she contends that the termination order was void because the girls were not before the court and that the evidence is legally and factually insufficient to support the constructive abandonment findings. Because we hold that the termination order is not void and that the evidence is legally and factually sufficient to support the constructive abandonment findings, we affirm the trial court's termination order.

## FACTS AND PROCEDURAL HISTORY

Jackie and Rachel's paternal aunt (Aunt) filed a petition for sole managing conservatorship of the girls and their two younger siblings in April 2018. By June 2018, Aunt had decided that she no longer wanted custody of the girls and wanted them out of her home, and the girls alleged that they were being abused and also requested to be removed from Aunt's home. Aunt dropped the girls from her pleadings with an amended petition, and the Texas Department of Family and Protective Services (Department) filed a petition seeking conservatorship of the girls

---

[1] We use aliases to refer to the subject children and their family. *See* Tex. R. App. P. 9.8(b)(2) (requiring courts to use aliases to refer to minors in parental-rights termination cases and, if necessary to protect the minors' identities, to also use aliases to refer to their family members); *see also* Tex. Fam. Code Ann. § 109.002(d).

and termination of their parents' rights, followed by a motion to sever the suit involving the girls from the suit involving their siblings. The associate judge severed the suit involving the girls from the suit involving their siblings and ordered in writing "that the clerk shall assign a new cause number to the severed cause of action, and shall notify each party of the new cause number. All future filings relating to the suit affecting the [girls] shall be made in the new cause number." The severance order also ordered the clerk to place copies of the following documents into the new case file:

1. the live pleadings;

2. any interlocutory judgments of termination with respect to the above-named child[ren];

3. copies of documents relating to service of process on the parents of said child[ren];

4. and any other document requested by a party or attorney to be included in the severed file as relevant to an interlocutory decree of termination.

Nevertheless, the parties and the trial court continued to use the cause number from the siblings' case (the old trial court cause number) on documents in the girls' termination case instead of the new cause number.

The Department pursued termination of Mother's parental rights to the girls based on the girls' best interests and the constructive abandonment ground. Mother was in prison and did not personally appear at the termination trial, but her appointed counsel did appear.

3

Only the caseworker testified. She stated:

- The girls had lived "with various friends and relatives and then wound up with . . . [A]unt in April of 2018";

- The girls had "significant behavioral problems" involving self-harm and aggression, and Aunt did not want them in the home with the younger children she was raising;

- The Department tried to find a family placement for the girls, reaching out to family members and family friends, to no avail;

- When the caseworker received the case in June 2018, Aunt and the girls did not know where Mother was;

- Aunt had not seen Mother in several years;

- Aunt told the caseworker that Mother was a drug addict and was "usually on and off homeless";

- Mother "had not been involved in the girls' lives very consistently for quite some time";

- The girls had not lived with Mother for about six years;

- A "pretty bare minimum" service plan was created for Mother; the Department planned to tailor it to meet her needs when she was located and met with the caseworker;

- Mother called the caseworker after she was released from Tarrant County Jail in August 2018;

- Mother and the caseworker set an appointment to meet about the service plan and visits with the girls;

- The caseworker gave Mother the address of the CPS office;

- Mother did not give the caseworker any contact information;

- Mother did not appear for the appointment or otherwise contact the caseworker;

4

- In March 2019, the caseworker discovered that Mother was back in Tarrant County Jail and visited her;

- Mother expressed an interest in voluntarily relinquishing her parental rights and intended to do so;

- The girls requested to visit Mother in jail and did so one time in April 2019;

- Mother never otherwise visited the girls during the pendency of the case, nor did she ask to;

- In April 2019, Mother was convicted of three felonies, including possession of four or more but less than 200 grams of heroin;

- The Department made reasonable efforts to return the girls to Mother;

- Mother did not regularly visit or maintain significant contact with the girls;

- Mother did not show that she could provide the girls with a safe and stable environment; and

- Mother's parental rights should be terminated on the constructive abandonment ground.

The three exhibits admitted show that all three of Mother's convictions were for drug-related felonies. The exhibits also show that Mother was in jail from mid-July 2018 to mid-August 2018, from mid-September 2018 to mid-October 2018, and from mid-January 2019 until she was sentenced to prison in April 2019.

Based on the caseworker's testimony and the three exhibits, the trial court granted the Department's termination petition.

The trial court's original termination order, signed May 31, 2019, bears the old trial court cause number, as do Mother's original notice of appeal, the original clerk's

record, and the original reporter's record. On July 2, 2019, after Mother filed her notice of appeal and after the original clerk's record and reporter's record were filed in this court, the trial court signed a nunc pro tunc order of termination bearing the new trial court cause number. Mother's notice of appeal and the record have subsequently likewise been amended to reflect this change.

## DISCUSSION

### I. Using the wrong cause number did not void the termination proceedings or the termination order.

In her first issue, Mother contends that the termination order is void because the girls were not before the court and that the nunc pro tunc order of termination could not cure this alleged judicial error. We hold that the trial court's using the wrong cause number in the girls' termination case, both in the proceedings and on the documents, was a clerical error cured by the nunc pro tunc order of termination; the termination order is therefore not void.

Mother argues that the girls were not before the court after the severance, but the severance order split a single case into two cases in the same court. The record does not reflect that either case was transferred out of the 325th District Court. Thus, the girls remained before the court. Mother also asserts that the severance order was a proper judicial act and not a clerical error. We agree with Mother that nothing about the severance appears improper. Mother argues, though, that the nunc pro tunc order of termination

6

was not merely to correct a clerical error regarding the final order's cause number. . . . The [order] was attempting to correct an oversight by everyone but ultimately a judicial error. The fatal judicial error being that the trial court presided over numerous hearings and a final trial where the subject children had been judicially severed from the case.

She cites no support for these assertions, and we reject them.

Whether an error corrected by a nunc pro tunc order is clerical or judicial is a legal issue that we review de novo. *Escobar v. Escobar*, 711 S.W.2d 230, 232 (Tex. 1986); *In re M & O Homebuilders, Inc.*, 516 S.W.3d 101, 109 (Tex. App.—Houston [1st Dist.] 2017, orig. proceeding). When making our decision, we look at the trial court's actual rendition, not what it could or should have rendered. *Escobar*, 711 S.W.2d at 231; *M & O Homebuilders, Inc.*, 516 S.W.3d at 109. A judicial error stems from a legal or factual mistake that requires judicial reasoning to correct; a clerical error involves an incorrect transcription or entry of the judgment. *M & O Homebuilders, Inc.*, 516 S.W.3d at 109. The trial court's mistaken use of the old trial court cause number instead of the new trial court cause number was a clerical error remedied by the nunc pro tunc order of termination. *See In re N.S.*, No. 04-14-00291-CV, 2015 WL 4932850, at *4 (Tex. App.—San Antonio Aug. 19, 2015, no pet.) (mem. op.) (holding "omission of [a] . . . cause number from [an] order was clerical and could be corrected by judgment nunc pro tunc"); *Meeks v. Meeks*, 783 S.W.2d 823, 823–24 (Tex. App.—Fort Worth 1990, no writ) (characterizing the filing of an order under the wrong cause number as clerical and noting that the appellee "caused nunc pro tunc orders to be filed" to correct it). Mother's reliance on a case reversing based on

judicial error is misplaced. *See Finlay v. Jones*, 435 S.W.2d 136, 138–39 (Tex. 1968) (orig. proceeding) (holding the trial court's changing service facts in its nunc pro tunc judgment was judicial error invalidating that judgment).

Further, using the old trial court cause number did not cause any confusion to the parties. All the parties and the trial court operated under the same misconception regarding the cause number. The trial court rendered one final judgment—the termination order, and Mother appealed that termination order, no matter what cause number the written judgment bore. *See, e.g.*, *LaGoye v. Victoria Wood Condo. Ass'n*, 112 S.W.3d 777, 782 (Tex. App.—Houston [14th Dist.] 2003, no pet.) ("[W]e find that the misnumbering caused no confusion regarding the judgment from which LaGoye seeks to appeal.").

As other courts have rationalized, "A party should not be punished for failure to comply with the terms of an order of severance ignored by both the opposing party and the court." *Blankenship v. Robins*, 878 S.W.2d 138, 139 (Tex. 1994) (citations and internal quotation marks omitted) (holding the motion for new trial and appeal bond filed in the severed cause number instead of the original cause number invoked appellate court jurisdiction of the appeal of the judgment in the original cause number); *Windsor v. Fleming*, No. 10-14-00392-CV, 2019 WL 3804484, at *11 n.3 (Tex. App.—Waco Aug. 7, 2019, no pet. h.) (mem. op.) (noting that Windsor's filing several documents in the original cause number instead of the new cause number "d[id] not . . . affect [the Waco court's] analysis" of his appellate issues). "Instead, the

8

decisions of the courts of appeals should turn on substance rather than procedural technicality." *Blankenship*, 878 S.W.2d at 139 (citations and internal quotation marks omitted); *Windsor*, 2019 WL 3804484, at *11 n.3.; *cf. Alaimo v. U.S. Bank Trust Nat'l Ass'n*, 551 S.W.3d 212, 218, 219 (Tex. App.—Fort Worth 2017, no pet.) (holding the judgment from the underlying action void because it was signed after the expiration of the trial court's plenary power and declining to treat that judgment as if it were correctly filed in the bill of review proceeding because "*[W]e see a difference between an inadvertent error in the numbering or styling of documents and pleadings and what occurred here*," which was "[w]illful disregard of the law") (emphasis added).

Because the trial court had jurisdiction over the girls and the termination suit and properly rendered an appealable termination order, we overrule Mother's first issue.

## II. Clear and convincing evidence supports the constructive abandonment findings.

In Mother's second issue, she contends that the evidence is legally and factually insufficient to support the trial court's constructive abandonment findings.

### A. Standards of Review

For a trial court to terminate a parent–child relationship, the Department must prove two elements by clear and convincing evidence:  1) that the parent's actions satisfy one ground listed in family code section 161.001(b)(1); and 2) that termination is in the child's best interest.  Tex. Fam. Code Ann. § 161.001(b); *In re E.N.C.*,

9

384 S.W.3d 796, 803 (Tex. 2012); *In re J.L.*, 163 S.W.3d 79, 84 (Tex. 2005). Evidence is clear and convincing if it "will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." Tex. Fam. Code Ann. § 101.007; *E.N.C.*, 384 S.W.3d at 802.

Mother does not challenge the trial court's best-interest finding. She challenges only the constructive abandonment findings. To determine whether the evidence is legally sufficient to support the constructive abandonment findings, we look at all the evidence in the light most favorable to the challenged findings to determine whether a reasonable factfinder could form a firm belief or conviction that the findings are true. *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005); *see* Tex. Fam. Code Ann. § 161.001(b)(1)(N). We assume that the factfinder settled any evidentiary conflicts in favor of its findings if a reasonable factfinder could have done so. *J.P.B.*, 180 S.W.3d at 573. We disregard all evidence that a reasonable factfinder could have disbelieved, and we consider undisputed evidence even if it is contrary to the findings. *Id.* That is, we consider evidence favorable to the findings if a reasonable factfinder could, and we disregard contrary evidence unless a reasonable factfinder could not. *See id.* The factfinder is the sole judge of the witnesses' credibility and demeanor. *In re J.O.A.*, 283 S.W.3d 336, 346 (Tex. 2009).

We must perform "an exacting review of the entire record" in determining the factual sufficiency of the evidence supporting the constructive abandonment findings. *In re A.B.*, 437 S.W.3d 498, 500 (Tex. 2014); *see* Tex. Fam. Code Ann.

10

§ 161.001(b)(1)(N). Nevertheless, we give due deference to the factfinder's findings and do not supplant them with our own. *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006). We review the whole record to decide whether a factfinder could reasonably form a firm conviction or belief that Mother constructively abandoned the girls. *See* Tex. Fam. Code Ann. § 161.001(b)(1)(N); *In re C.H.*, 89 S.W.3d 17, 28 (Tex. 2002). If the factfinder reasonably could form such a firm conviction or belief, then the evidence is factually sufficient. *C.H.*, 89 S.W.3d at 18–19.

## B. Constructive Abandonment Law

To establish constructive abandonment under Section 161.001(b)(1)(N), the Department had to prove by clear and convincing evidence that: (1) Mother had "constructively abandoned the [girls,] who ha[d] been in [the Department's] permanent or temporary managing conservatorship . . . for not less than six months"; (2) the Department made reasonable efforts to return the girls to Mother; (3) Mother had not regularly visited or maintained significant contact with the girls; and (4) Mother had demonstrated an inability to provide the girls with a safe environment. Tex. Fam. Code Ann. § 161.001(b)(1)(N); *see In re A.S.*, No. 02–16–00284–CV, 2017 WL 371496, at *5 (Tex. App.—Fort Worth Jan. 26, 2017, pet. denied) (mem. op.).

## C. Analysis

Mother contends that the trial court's constructive abandonment findings "were vague, speculative and remote and that there was not clear and convincing

11

evidence of constructive abandonment." Mother does not contest that the girls were in the Department's care for six months, but she (1)"strongly challenges the finding that the Department made reasonable efforts to return the [girls] to [her]"; (2) asserts "that there can be no finding that she failed to maintain visitation or . . . contact"; and (3) claims that "[t]here was little or no evidence of whether she had demonstrated an inability to provide the [girls] with a safe environment."

## 1. Reasonable Efforts

Mother challenges the evidence supporting the "reasonable efforts" element. Tex. Fam. Code Ann. § 161.001(b)(1)(N). She contends that the record does not show any effort by the caseworker to find her after the caseworker received the case in June 2018 until Mother called the caseworker in August 2018 or after that telephone call until the caseworker learned Mother was in jail in March 2019. Mother further contends that there is no evidence that any Department employee ever presented a service plan to her, explained the available services, or discussed what Mother was expected to do. However, the trial court heard the caseworker's testimony that

- The Family Based Safety Services caseworker who previously staffed the case attempted to locate Mother but could not;

- When the current caseworker received the case in June 2018, she asked Aunt and the girls about Mother's whereabouts and contact information, and they did not know where Mother was or how to reach her;

12

- A minimal service plan had been created for Mother and would be tailored for her specifically when Mother was found and the caseworker met with her;

- Mother called the caseworker in August 2018, and they scheduled a meeting at the CPS office to go over the service plan and set up visitation;

- The caseworker gave Mother the address of the office, but Mother did not give the caseworker any contact information;

- Mother did not appear for the meeting or otherwise contact the caseworker;

- The caseworker saw Mother for the first time in March 2019 after discovering that she was in Tarrant County Jail, and Mother communicated her intention to sign an affidavit of relinquishment;

- The Department tried without success to find a family placement for the girls; and

- The Department made reasonable efforts to return the girls to Mother.

Applying the appropriate standards of review, we hold that the evidence is legally and factually sufficient to support the trial court's finding that the Department made reasonable efforts to return the girls to Mother. *See C.G. v. Tex. Dep't of Family & Protective Servs.*, No. 03-18-00852-CV, 2019 WL 3367524, at *7 (Tex. App.—Austin July 26, 2019, no pet.) (mem. op.) ("The caseworker persisted in trying to set up appointments and assist Chad with work on his parenting service plan, and a lack of communication was not the Department's fault."); *In re G.T.*, No. 02-17-00279-CV, 2017 WL 6759036, at *4 (Tex. App.—Fort Worth Dec. 28, 2017, no pet.) (mem. op.) ("A reasonable factfinder could form a firm conviction or belief that [the minor

13

parent's] running away [a few weeks after the service-plan discussion] did constitute an unwillingness to complete the service plan as well as a rejection of the services offered in the plan."); *Gamez v. Tex. Dep't of Family & Protective Servs.*, No. 03-09-00190-CV, 2009 WL 4456150, at *7 (Tex. App.—Austin Dec. 1, 2009, no pet.) (mem. op.) (concluding in dicta that a parent's failure to provide contact information and the Department's trying to find her and provide services to her while the case was pending supported the "reasonable efforts" element of constructive abandonment).

### 2. Lack of Regular Visitation and Significant Contact

Regarding the visitation element, Mother alleges that the Department never made her aware of the visitation and communication guidelines for the girls and that besides the visit initiated by the girls in April 2019, there is no evidence that access to the girls or any visits were offered to Mother. A parent fails to regularly visit or maintain significant contact with children when "visits are intermittent or sporadic." *C.G.*, 2019 WL 3367524, at *7. The evidence shows that Mother had not been a consistent figure in the girls' lives for several years and that they did not know how to reach her when the caseworker received the case in June 2018. The evidence also shows that Mother knew that the August 2018 meeting she chose not to attend with the caseworker concerned visitation. Further, the evidence reveals that Mother never asked to visit the girls; in fact, she expressed an intent to sign an affidavit of relinquishment of her parental rights to the girls in March 2019, before the April 2019 visit between Mother and the girls that occurred because the girls requested it.

Finally, the caseworker testified that Mother had not regularly visited or maintained contact with the girls. Applying the appropriate standards of review, we hold that the evidence is legally and factually sufficient to support the trial court's finding that Mother had not regularly visited or maintained significant contact with the girls. *See* Tex. Fam. Code Ann. § 161.001(b)(1)(N); *C.G.*, 2019 WL 3367524, at *7 (upholding the finding that the father failed to visit regularly or maintain significant contact when he left, slept, or used his phone during visits and there was no evidence that he otherwise tried to phone or correspond with the children); *In re T.T.*, No. 11-18-00291-CV, 2019 WL 1716416, at *2–3 (Tex. App.—Eastland Apr. 18, 2019, no pet.) (mem. op.) (upholding the constructive abandonment finding when evidence showed that the father had not seen his child for years and that he did not try to contact the child while the case was pending despite being informed how); *In re C.J.B.*, No. 07-17-00069-CV, 2017 WL 2822512, at *2 (Tex. App.—Amarillo June 28, 2017, pet. denied) (mem. op.) ("[W]hile [the father] may not have been allowed visitation until he fulfilled his service plan, that did not prevent him from communicating with the child through other means."); *In re K.G.*, 350 S.W.3d 338, 355 (Tex. App.—Fort Worth 2011, pet. denied) (upholding the trial court's finding on the visitation element based on testimony that the parent visited once between September and December 2009 and did not visit between February and May 2010 or accept an alternative visitation schedule); *Gamez*, 2009 WL 4456150, at *7 (concluding in dicta that evidence that the parent's last contact with the child had occurred more than a year

15

before the trial and the parent's failure to provide contact information supported the visitation element of the constructive abandonment ground).

### 3. Inability to Provide Safe Environment

Mother contends that the only evidence of her inability to provide the girls with a safe environment was secondhand hearsay that she was often homeless and the evidence of her confinement in jail and prison. Evidence a factfinder may consider in deciding whether a parent has shown that she cannot provide her children with a safe environment includes the parent's failures to participate in services and to visit with the children, the parent's lack of stable housing, and past substance abuse, *C.G.*, 2019 WL 3367524, at *7; the parent's lack of stable employment, *see A.K. v. Tex. Dep't of Family & Protective Servs.*, No. 03-14-00450-CV, 2014 WL 6612609, at *4 (Tex. App.—Nov. 21, 2014 no pet.) (mem. op.); and actions that led to the initial removal, *see In re M.R., J.*, No. 07-13-00440-CV, 2014 WL 2591616, at *5 (Tex. App.—Amarillo May 9, 2014, no pet.) (mem. op.).

The caseworker testified that the girls had not been in Mother's care in the six years before the removal and that the one time the girls visited with Mother during the case had been at their request. The caseworker also stated that Mother did not stay in contact with the caseworker or even begin services and had not shown an ability to keep stable housing or stable employment. Additionally, the caseworker stated that none of the girls' other family members would let the girls live with them after their removal from Aunt's home. The evidence shows that Mother had been in

16

jail at least three times during the pendency of the case and that she had recently been sentenced to three years in prison for offenses related to her drug use. Finally, the caseworker testified that Mother had not shown that she could provide the girls with a safe, stable environment. Applying the proper standards of review, we hold that the evidence is legally and factually sufficient to support the trial court's finding that Mother demonstrated that she could not provide the girls with a safe, stable environment. *See In re T.M.*, No. 2-09-145-CV, 2009 WL 5184018, at *5 (Tex. App.—Fort Worth Dec. 31, 2009, pet. denied) (mem. op.) ("[T]he evidence establishes Father's inability to provide the children with *any* environment . . . much less a *safe* environment, and the evidence is therefore legally and factually sufficient as to the safe environment element of constructive abandonment." (citations and internal quotation marks omitted)).

## D. Resolution

Having held that the evidence is legally and factually sufficient to support the challenged findings on the elements of the constructive abandonment ground, we overrule Mother's second issue.

## CONCLUSION

Having overruled Mother's two issues, we affirm the trial court's termination order.

17

/s/ Mike Wallach
Mike Wallach
Justice

Delivered:  October 31, 2019